No. 29,281.

J. W. CLEMENS, *Appellee*, v. THE KANSAS GAS AND ELECTRIC COMPANY, *Appellant*.

(289 Pac. 461.)

Opinion filed July 5, 1930.

*Paul H. Kimball, Webster W. Kimball,* both of Parsons, *H. L. McCune, R. B. Caldwell, Blatchford Downing, H. M. Noble* and *Lynn Webb,* all of Kansas City, Mo., for the appellant.

*Payne H. Ratner,* of Parsons, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff, owner of a farm on the west ·bank of the Neosho river in Labette county, brought this action against defendant for damages to his land and crops caused by flood waters of the Neosho river in the months of September, 1926, and April and June, 1927, which were deflected on to his land by a railway embankment constructed by defendant in 1923 on the opposite side of the stream.

Plaintiff's petition alleged that defendant owns and maintains a railroad track near Straus, in Labette county, and—

"3. . . . That said railroad track is constructed along the east bank of said [Neosho] river and has a grade varying from two to eight feet above the surrounding land; that in constructing said embankment and its railroad bed defendant negligently made no provision for letting flood waters pass, but made provision only for surface drainage."

Six causes of action were pleaded, three for loss and damages to crops by various floodings, and three for repeated damages to the ·land itself. Typical of the latter was the second cause of action, which in part alleged:

"That due to said negligent construction and maintenance of defendant's said railroad track and grade the water of said river was deflected from the east bank of said river to its west bank and over plaintiff's said land, so that by reason of such construction the water on plaintiff's said land was approximately fifteen inches deeper than it would have been if defendant had not constructed said railroad track, or than it would have been if defendant had constructed or caused same to be constructed in a manner which would have permitted the free passage of water in time of overflow; . . . so that, whereas, during similar rises in prior years the land had been merely covered with backwater, during the month of September, 1926, a strong current of water ran across plaintiff's said land, washing it to an extent of making deep depressions in some parts of about seventy-five acres of plaintiff's said land; that said depressions were caused by the increased overflow resulting from the increased depth and current of the flood waters caused by the said grade embankment of defendant's said railroad; that before said depressions were made in said seventy-five acres of plaintiff's land said portion of plaintiff's farm was of the fair market value of $60 per acre; that after said depressions were thus caused in said seventy-five acres [the fair market value thereof was only $50 per acre] . . .; that by reason of defendant's said

negligent construction and maintenance of its said railroad grade and track, plaintiff was damaged in the sum of $750 by the said washing out of said depressions in his said land."

On these several causes of action plaintiff prayed judgment, viz.:

(1) Loss and damage to 65 acres of corn flooded in September, 1926.... $800
(2) Damage to 75 acres of land flooded in September, 1926........... 750
(3) Loss and damage to 25 acres of wheat flooded in April, 1927........ 100
(4) Damage to 80 acres of land flooded in April, 1927................. 800
(5) Loss and damage to 40 acres of corn flooded in June, 1927......... 145
(6) Damage to 40 acres of land flooded in June, 1927................. 400

Defendant's answer, among other matters, pleaded the statute of limitations and a prior adjudication. Touching the latter defense it was alleged that an action between the same parties for permanent damages to plaintiff's land had been begun and prosecuted to final judgment. A copy of the petition in the prior case was attached to the answer as an exhibit. That petition was formulated in two causes of action—one for loss of crops flooded by reason of the high waters in the Neosho river being deflected on to plaintiff's land by defendant's railway embankment on the opposite side of the stream, and a second count, with which we are presently concerned, was pleaded thus:

"1. That the construction of the railroad of the defendant as above alleged is a permanent construction; that upon the rising of the Neosho river each year the obstruction of the water by the defendant's railroad will cause seventy-five (75) acres of the land of the plaintiff to be overflowed. That prior to the construction of said railroad track said seventy-five acres of land of the plaintiff was of the reasonable market value of $125 per acre; that because of the negligent construction of the defendant's railroad the said land is of a value not to exceed $50 per acre; that the plaintiff has been damaged by the negligent construction of the defendant's railroad track because of the permanent decrease in value of plaintiff's land in the sum of $5,625."

Plaintiff lodged a demurrer against defendant's answer, but before invoking judgment thereon counsel for the litigants formulated an agreed statement of facts for the court to consider in connection with the pleadings and demurrer. In part it reads:

"Agreed Statement of Facts.

"1. The railroad embankment referred to in this action was constructed prior to October 11, 1923, the date when plaintiff instituted suit No. 2245 [the prior litigation pleaded in defendant's answer] . . .

"2. The two-year statute of limitations governs the injuries complained of in this suit, to which the third subdivision of 60-305 R. S. applies.

"3. The verdict in case No. 2245, according to the original shown in the

files, reads as follows: 'We, the jury, find the issues herein joined in favor of the plaintiff and against the defendant and we assess as the amount of his recovery herein the sum of $500 damage to land.'

"4. Both Clemens and Phœnix Utility Company filed motions for a new trial and appealed from the judgment of the district court in case No. 2245, but Clemens later dismissed his appeal.

"5. The opinion of the supreme court affirming the judgment in case No. 2245 appears in 119 Kan. 190. The opinion is erroneous in stating in substance that there was any recovery by plaintiff for crop damage.

"6. In case No. 2245 the court instructed the jury that if it found for plaintiff it could not consider damage to the land to be caused by floods in the future, but only such damage as had been caused by the flood of June, 1923. . . .

"7. The jury in answer to special question No. 1, in case No. 2245, found that the owner of the railroad and the land upon which it is located was the Phœnix Utility Company. The court set aside this answer and substituted in its place Kansas Gas and Electric Company.

"9. The railroad embankment involved in this suit is the same one that is alleged to have caused the damage in case No. 2245, except that plaintiff contends and defendant denies it has been raised in height and enlarged since the disposal of case No. 2245."

The trial court sustained plaintiff's demurrer to those parts of the answer which raised the statute of limitations and pleaded the prior adjudication.

Defendant appeals, contending that both those defenses were insurmountable. Considering first the defense based upon the conclusiveness of the prior adjudication, it is quite apparent that the subject matter of the prior lawsuit was the same as it is in this lawsuit so far as the matter of damages to plaintiff's land is concerned. In the second cause of action in the lawsuit of 1923 plaintiff alleged permanent damages to the land and sued to recover $5,625 thereof, and judgment for $500 specifically for damages to his land was entered in plaintiff's behalf. Plaintiff was dissatisfied therewith and appealed, but later dismissed his appeal and that judgment became a finality.

In *Marshall v. Railroad Co.*, 96 Kan. 470, 152 Pac. 634, the action was to recover for damages to plaintiff's land caused by culverts and ditches adjacent thereto which were incidental to the construction of a railway. Plaintiff was nonsuited after an agreed statement of facts was submitted which conceded that there had been a prior adjudication of the subject matter of the action. In the earlier litigation plaintiff had been defeated, but the finality of the judgment could not be questioned on that account. This court reviewed

and cited practically all our earlier cases, beginning with *A. & N. Rld. Co. v. Garside,* 10 Kan. 552, and held:

"When a property owner sues a railroad company for damages arising from the construction of a railroad adjacent to his property, the damages, matured, continuing and prospective, are the subject of the lawsuit, and upon the conclusion of that action the matter is *res judicata* and cannot be the basis of another lawsuit against the lessee of the railroad, following rule announced in *Hubbard v. Power Co.,* 89 Kan. 446, 131 Pac. 1182." (Syl. ¶ 4.)

In *Hubbard v. Power Co.,* 89 Kan. 446, 131 Pac. 1182, it was said:

"Where lands are subject to overflow by reason of the erection and maintenance of a dam permanent in character, the owner who has not been compensated for the appropriation of his lands may, if he see fit, maintain an action to recover all damages occasioned to the lands, present and prospective, and such cause of action accrues at the time of the appropriation." (Syl. ¶ 1.)

Permanent damage to his land was what plaintiff sued for in 1923 and it was for such damage that he obtained judgment. In *First Nat'l Bank v. Schruben,* 125 Kan. 417, 265 Pac. 53, the familiar rule of *res judicata* was restated to the effect that when a cause of action has been prosecuted to final judgment all matters pertaining thereto and which were or properly should have been litigated under the facts constituting the cause of action are conclusively determined by that judgment and binding upon all parties to the litigation and those in privity with them. Recent cases controlled by the same rule were: *Lux v. Columbian Fruit Canning Co.,* 120 Kan. 115, 242 Pac. 656; *Rucker v. Rafter,* 122 Kan. 91, 251 Pac. 420; *Lodge v. Order of United Commercial Travelers,* 125 Kan. 26, 262 Pac. 598; *Fletcher v. Kellogg,* 125 Kan. 330, 263 Pac. 1048; *Lyon v. Harrison,* 127 Kan. 318, 273 Pac. 429.

It is insisted, however, that the rule of *res judicata* should not be applied in this case, because, as shown by the agreed statement of facts, the trial court in the prior action instructed the jury that it could only consider past damages and not future damages. Doubtless that unsound statement of law was what caused the plaintiff to appeal, and it is regrettable that he later dismissed that appeal, because there, if anywhere, he might have had that instruction corrected and a new trial directed. But the fact that there was a bad instruction in that lawsuit, which doubtless held down the damages awarded him below the amount he would otherwise have received, does not furnish a ground in this subsequent, independent lawsuit for ignoring the finality and binding force of that former judgment.

In *Winslow v. Stokes*, 48 N. C. 285, the action was to recover upon a written covenant in relation to the management of a sawmill. The pleas in defense were performance of the covenant, former suit, and prior recovery upon the same cause of action. Plaintiff offered to show that in the prior action the trial court instructed the jury to give plaintiff damages up to the time of the trial, but for no longer time. This testimony was ruled out and plaintiff appealed. The supreme court ruled:

"Where in an action for breaches of a covenant the plaintiff was entitled to prospective damages—that is, damages accruing subsequently to the bringing of the suit—and under the erroneous instruction of the court only damages to the time of the trial were given, this affords no ground for bringing another action for the same breaches." (Syl.)

In the opinion it was said:

"The recovery in the former suit upon the same covenant in which the same breaches were assigned was, we think, a bar to the present action, and his honor properly ruled out the testimony which was offered to show that full damages were not given. The covenant was, in the particulars mentioned, one and indivisible, and upon a breach of it the plaintiffs were entitled to the whole amount of damages, present and prospective, caused by such breach. If the damages were restricted in consequence of instructions from the court it was an error which the plaintiffs, by taking the proper steps, might have had corrected in that action. Their omission to do so cannot give them the right to harass the defendant with the expense and trouble of another suit." (p. 285.)

In Wells' Res Judicata and Stare Decisis, § 9, it is said:

"If it [a former judgment] were acquiesced in by a failure to appeal, or if an appeal were ineffectually taken, it is nevertheless conclusive, and constitutes a positive and immovable bar to another suit on the same cause of action."

In 2 Freeman on Judgments, 5th ed., § 727, it is said:

"Neither can the force of a judgment as *res judicata* be destroyed or impaired by showing that it was clearly erroneous and ought not to have been rendered, if the court had jurisdiction, whether such error resulted from the court's drawing an erroneous conclusion from conceded or established facts, or making a ruling during the progress of the trial whereby evidence was erroneously admitted or excluded, or the law misstated to the jury, or one of the parties otherwise deprived of the benefit of his cause of action or defense or of some part thereof. Even though the evidence on which the court based its judgment was incorporated in the record, it cannot be looked to for the purpose of showing that the judgment is erroneous, in a collateral proceeding. Nor is the effect of a judgment as *res judicata* lessened when the fact that it is erroneous is established by the decision of the highest appellate tribunal in the state, rendered in another action."

Among our own precedents where this rule was applied are *Bank*

*of Santa Fe v. Haskell County Bank,* 51 Kan. 50, 32 Pac. 627; *Myers v. Jones,* 61 Kan. 191, 212, 59 Pac. 275; *Clevenger v. Figley,* 68 Kan. 699, 712, 75 Pac. 1001; *Carter v. Hyatt,* 76 Kan. 304, 308, 91 Pac. 61; *Yeager v. Aikman,* 80 Kan. 656, 663 and citations, 103 Pac. 132; *Skaer v. Capsey,* 127 Kan. 383, 386, 387, 273 Pac. 464. See, also, 34 C. J. 768, 769.

And so here. Whatever errors of substantive law or of trial practice may have occurred in the lawsuit of 1923, however poorly it may have been tried by court or counsel, however inadequate the amount of the verdict and judgment, or even if the verdict and judgment had been in favor of defendant, plaintiff had no redress therefrom except by appeal. Having acquiesced in that judgment by abandoning his appeal, he suffered it to become a finality, and a finality it must remain.

This conclusion renders it unnecessary to consider the error assigned on the trial court's ruling on the statute of limitations as a bar to the action. The judgment of the district court must be reversed and the cause remanded with instructions to enter judgment for defendant on the pleadings and agreed statement of facts.

It is so ordered.